UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**FILED**

January 30, 2026

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____ **CM** _____

DEPUTY

| | | |
|---|---|---|
| ALICE UWIDUHAYE, | § | |
| | § | |
| Petitioner, | § | |
| | § | 5:26-CV-00191-MA |
| v. | § | |
| | § | |
| ROSE THOMPSON, et al, | § | |
| | § | |
| Respondents | § | |
| | § | |

## OPINION AND ORDER

The Court now considers Petitioner Alice Uwiduhaye's ("Petitioner") "Petition for Writ of Habeas Corpus."[1] Petitioner, who is currently in immigration detention, alleges that Respondents are holding her in unlawful custody cognizable in habeas corpus under 28 U.S.C. § 2241 and seeks immediate release.[2] Upon reviewing the petition, response, and applicable law, the Court **DENIES** Petitioner's writ.

### I.    FACTUAL BACKGROUND

Petitioner is a citizen and national of Rwanda who entered the United States through Mexico on or about February 14, 2024.[3] Petitioner was detained at the time of her entry by the Department of Homeland Security ("DHS"). On February 29, 2024, Petitioner was issued a Notice to Appear charging her as removable under 8 U.S.C. § 1182(a)(6)(A)(i) for being present in the United States without being admitted or paroled.[4] Petitioner was released on her own recognizance.[5] On October 7, 2024, Petitioner filed her Form I-589 Application for Asylum, Withholding of Removal and Relief Under the Convention Against Torture.

Petitioner was re-arrested and detained by Immigration and Customs Enforcement ("ICE") on July 15, 2025, during a scheduled check-in "pursuant to a Warrant for Arrest of Alien pending

---

[1] Dkt. No. 1.
[2] Dkt. No. 1, at 1.
[3] Dkt. No. 1, at 4–5.
[4] Dkt. No. 3-1, at 1.
[5] Dkt. No. 3-1, at 2.

her immigration hearing."[6] On October 9, 2025, an immigration judge found Petitioner statutorily ineligible for asylum under 8 C.F.R. § 1208.33, but granted a withholding of removal[7] to Rwanda upon finding that there was a clear probability that Petitioner would be persecuted if she returned to her country of origin.[8] Petitioner did not appeal the immigration judge's ruling.

On November 11, 2025, counsel for Petitioner sent a release request to the ICE San Antonio office requesting that she be release "pursuant to 8 U.S.[C.] § 1231(c)(2)(C)."[9] Respondents' Deportation Officer Matthew Gmitro responded to this request on November 18, 2025, informing counsel that Petitioner "will continue to be evaluated under the Post Order Custody Review (POCR) process until a safe third part country for removal is identified."[10]

On or about November 19, 2025, Enforcement and Removal Operations ("ERO") submitted a Travel Document Request for the Consular Office of Rwanda.[11] Petitioner was served with an I-229A Warning for Failure to Depart on November 23, 2025, which Respondents assert Petitioner "refused to sign."[12] Respondents allege that Petitioner "stated she would like to be removed to Australia where has family . . . [and] also claimed to have been born in the Democratic Republic of the Congo."[13] Respondents allege that following this request, ERO submitted a Form-241 request for acceptance to the government of Australia on January 5, 2026, and is currently awaiting the Australian government's response.[14]

Petitioner argues that her current detention violates 8 U.S.C. § 1231 as interpreted by the Supreme Court in *Zadvydas*, which authorizes detention after the initial 90-day period following an order for removal for only "a period reasonably necessary to bring about the [noncitizen]'s removal from the United States."[15] Petitioner further argues that until Respondents have secured a third country to which she can be removed her removal is not reasonably foreseeable.[16] Petitioner

---

[6] Dkt. No. 3-1, at 2.
[7] Immigration and Nationality Act § 241(b)(3), 8 U.S.C. § 1231(b)(3).
[8] Dkt. Nos. 1, at 5; 3-2, at 1.
[9] Dkt. No. 1-7, at 1.
[10] Dkt. No. 1-9, at 1.
[11] Dkt. No. 3-1, at 2.
[12] Dkt. No. 3-2, at 2.
[13] Dkt. No. 3-2, at 2.
[14] Dkt. No. 3-1, at 3.
[15] *Zadvydas v. Davis*, 533 U.S. 678, 689, 701 (2001).
[16] Dkt. No. 1, at 12.

alleges that her continued detention violates her due process rights; the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231(a); and the Administrative Procedures Act.[17]

Respondents, in turn, argue that Petitioner cannot meet her burden of demonstrating that her removal to a third country is "unlikely in the reasonably foreseeable future" in light of the affirmative steps they are taking to facilitate her removal.[18] Respondents further argue that Petitioner's due process claim is not ripe under *Zadvydas* because she has not been detained for more than six months since her final removal determination.[19] Finally, Respondents argue that they have provided Petitioner the constitutional de minima of procedural due process in accordance with current DHS guidance for third-country removals.[20]

## II.    JURISDICTION AND LEGAL STANDARD

A writ of habeas corpus is used to challenge an arrest, commitment, detention, extradition, bail, or the jurisdiction of a criminal sentence.[21] Under 28 U.S.C. § 2241, district courts may hear habeas corpus challenges to the legality of the detention of noncitizens.[22] The petitioner bears the burden of proving, by preponderance of the evidence, that she is being held contrary to the law.[23]

Petitioner is detained in the Karnes County Immigration Processing Center in Karnes City, Texas, within the Western District of Texas.[24] Nevertheless, the Court finds that it lacks jurisdiction over Petitioner's writ, as Petitioner's case is premature.

During the initial 90-day removal period following a final removal order, detention is mandatory.[25] However, the removal period does not begin until the removal order becomes administratively final.[26] In Petitioner's case, this occurred after the thirty-day appeal period for the immigration judge's October 9, 2025 order expired,[27] which the Court calculates as November 9, 2025. Thus, Petitioner's 90-day removal period remains ongoing.

---

[17] Dkt. No. 12 –13.
[18] Dkt. No. 3, at 4 (citing *Andrade v. Gonzalez*, 459 F.3d 538, 543-44 5th Cir. 2006); *Gonzalez v. Gills*, No. 20-60547, 2022 WL 1056099 at 1 (5th Cir. Apr. 8, 2022)).
[19] Dkt. No. 3, at 6.
[20] Dkt. No. 3, at 7–9.
[21] *See Habeas Corpus*, BLACK'S LAW DICTIONARY (11th ed. 2019); 28 U.S.C. § 2241.
[22] *Rasul v. Bush*, 542 U.S. 466, 473 (2004); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 117 (2020) ("The writ . . . provide[s] a means of contesting the lawfulness of restraint and securing release.").
[23] *Villanueva v. Tate*, No. CV H-25-3364, 2025 WL 2774610, at *4 (S.D. Tex. Sept. 26, 2025) (quoting 28 U.S.C. § 2241(c)(3)).
[24] Dkt. No. 1, at 3.
[25] 8 U.S.C. § 1231(a)(2).
[26] 8 U.S.C. § 1231(a)(1)(B)(i).
[27] 8 C.F.R. § 1241.1; *see also Johnson v. Guzman Chavez,* 594 U.S. 523, 534 (2021).

Congress has expressly authorized the detention of noncitizens during this initial 90-day removal period in order to effectuate removal, and such detention is presumptively constitutional.[28] Because DHS is statutorily required to detain Petitioner during this period, Petitioner's writ is premature.[29]

## CONCLUSION AND HOLDING

For the foregoing reasons, the petition for writ of habeas corpus is **DENIED WITHOUT PREJUDICE** as premature. Petitioner may refile a petition for habeas relief if and when the claims become ripe for review. The Clerk of Court is directed to close this case.

IT IS SO ORDERED.

DONE this 30th day of January, 2026, in San Antonio, Texas.

MICAELA ALVAREZ
SENIOR UNITED STATES DISTRICT JUDGE

---

[28] *Zadvydas*, 533 U.S. at 683–84.
[29] See *Okpoju v. Ridge*, 115 Fed. Appx. 301, *1 (5th Cir. 2004), cert. den., 544 U.S. 1066 (2005) see also *Chance v. Napolitano*, 453 Fed. Appx. 535, *1 (5th Cir. 2011).